UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| SHANE SLONE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 20-093-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CE RESOURCE, INC., et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

*** *** *** ***

Defendants CE Resource, Inc., CE Resource, LLC, and CE Resources, Inc. (collectively, "CER" or "the defendants") have filed a motion to dismiss Plaintiff Shane Slone's Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). [Record No. 13] Slone alleges one count of defamation. [Record No. 9] After considering the parties' briefs, the Court will grant the motion, in part, and deny the motion, in part. Slone may proceed with his plagiarism accusation-based defamation *per quod* claim, but all other claims will be dismissed.

I.

This action involves the same factual background as that of another case pending before the Court: *Nursing CE Central, LLC v. CE Resource, Inc.* ("*Nursing CE Central*"), No. 5: 19-cv-413-DCR.[1] The plaintiff in that case, Nursing CE Central, LLC ("NCC"), has one member–

---

[1] CE Resource, Inc. is a party to this case as well as *Nursing CE Central*. CE Resource, LLC, and CE Resources, Inc. are defendants in this case but are not defendants in the related case. The Court will not conclude as a matter of law that these entities are substantively the same, but the parties have generally indicated that the conduct at issue is applicable to all of

Slone. [Record No. 9, ¶ 9] NCC has no other employees, directors, or managers apart from Slone. [*Id.* at ¶ 10]

Both NCC and the defendants develop and sell continuing education courses for nurses in Kentucky. [*Id.* at ¶ 12] They are vendors approved by the Kentucky Board of Nursing ("KBN"), and their Kentucky-focused courses attempt to meet that body's standards for continuing education resources. [*Id.* at ¶¶ 7, 12-13]

CER sells a course entitled "Burnout: Impact on Nursing and Quality of Care" and has indicated that it received a copyright for this work on April 25, 2018. [Record No. 1-14] Although NCC does not have employees other than Slone, it does contract with third parties to produce continuing education resources. NCC contracted with Tracy Everhart on April 28, 2019, to compose a course entitled "The Personal and Professional Effects of Nursing Burnout." [Record No. 1-8] Everhart has since acknowledged that another individual helped her produce the course due to ongoing health problems that prevented her from completing it herself. [Record No. 1-11, p. 2] The completed course names Everhart as the author. [Record No. 1-6, p. 3]

CER subsequently discovered that portions of the relevant NCC course copied excerpts from the defendants' copyrighted course. [Record No. 1-9, pp. 2-3] Everhart was contacted by a lawyer for CER regarding the copied portions, and she responded in a letter agreeing that certain passages had been plagiarized. [Record No. 1-11, p. 3] Everhart indicated that the third party who helped her compose NCC's course was the individual who copied CER's product but took responsibility for the matter as a professional course author. [*Id.*]

---

them. Therefore, the Court will indiscriminately use "CER" for simplicity when referring to the defendant in *Nursing CE Central* and the defendants in this action.

CER, through outside counsel, sent a cease and desist letter addressed to NCC and Slone on June 13, 2019. [Record No. 1-9] NCC, through outside counsel, responded on June 15, 2019, indicating that it was previously unaware of the issue, Everhart was the responsible party, and it would remove the offending course offering out of good faith even though it denied unlawful activity. [Record No. 1-10, pp. 2-3]

Anticipating litigation, CER's lawyer sent a litigation hold letter to KBN on July 18, 2019. [Record No. 1-14] A sentence from this letter has resulted in the claims asserted in this case and *Nursing CE Central*: "Recently it has come to our attention that Nursing CE Central plagiarized and violated [CER's] copyright in Nursing CE Central's course entitled 'The Personal and Professional Effects of Nursing Burnout.'" [*Id.* at p. 2]

NCC filed the related case on October 8, 2019. *Nursing CE Central*, Record No. 1. As relevant here, NCC alleged defamation claims based on the accusations of the litigation hold letter. The Court granted CER's motion to dismiss in that case, in part, on February 27, 2020. *Nursing CE Central*, Record No. 54. NCC now only maintains a defamation *per quod* claim in that case based on the plagiarism accusation of the litigation hold letter. *See id.*

Not satisfied with one lawsuit on this issue, Slone filed the present largely duplicative action on March 13, 2020.[2] [Record No. 1] He alleges in his Amended Complaint that the plagiarism accusation of the litigation hold letter was defamatory. [Record No. 9, ¶ 73] He also claims that when the plagiarism and copyright infringement accusations are considered together, the allegedly defamatory letter implies "willful copyright infringement in violation of 17 U.S.C. § 506." [*Id.* at ¶ 74] Slone states that he suffered damages because he was forced

---

[2] NCC is not a party to this action.

to disclose the allegations of the defamatory letter to a third party interested in acquiring NCC. [*Id.* at ¶¶ 66-70, 80-82] Slone claims that this third party had offered to share revenue with him and employ him after it acquired NCC. [*Id.* at ¶¶ 67-68] However, Slone alleges that the September 2019 disclosure of the defamatory letter caused the third party to withdraw its offers in October 2019. [*Id.* at ¶¶ 69, 70, 80-82]

## II.

The plaintiff initially attached nine exhibits to his Complaint, and the document referenced these attachments. [Record No. 1-6 to 1-14] Slone filed an Amended Complaint on March 17, 2020, without these attachments, but this pleading likewise refers to the same exhibits. [Record No. 9] The United States Court of Appeals for the Sixth Circuit has stated that "a court may consider 'exhibits attached [to the complaint] . . . [and] items appearing in the record of the case . . . so long as they are referred to in the complaint and are central to the claims contained therein,' without converting [a motion to dismiss] to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)). Because the Amended Complaint refers to the exhibits, they remain filed in the record, and they are central to the defamation claim, the Court will not convert the present motion to dismiss to a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

However, the plaintiff has attached four new exhibits to his response to CER's motion to dismiss. [Record No. 18-1 to 18-4] These are matters outside the pleadings. CER argues in its reply that the Court should strike or disregard these exhibits. [Record No. 19, p. 2] But

rather than construe the reply as a motion to strike, the Court simply will disregard them while conducting its analysis under Rule 12(b)(6).

Under Rule 8(a)(2), a pleading that states a claim must include, "a short and plain statement of the claim showing that the pleader is entitled to relief." The pleading, "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" and survive a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Twombly*, 550 U.S. at 555) (internal quotation marks omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility" that a party is entitled to relief based on the facts it has pleaded. *Id.*

### III.

### A.

Although several of the arguments offered in support and opposition to the pending motion to dismiss are similar to those concerning the motion to dismiss in *Nursing CE Central*, one prominent issue is entirely novel to this case. CER argues that the Amended Complaint should be dismissed because it does not plead facts that could plausibly satisfy the "about the plaintiff" component of a Kentucky law defamation claim. [Record No. 13-1, pp. 5-7]

In Kentucky, there are four elements of a defamation claim: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Toler v. Süd–Chemie, Inc.*, 458 S.W.3d 276, 282 (Ky. 2014) (quoting

Restatement (Second) of Torts § 558 (1977)) (internal quotation marks and citations omitted). "The first element of a defamation claim requires that the challenged statements be 'about' or 'concerning' the plaintiff." *Sandmann v. WP Co., LLC*, 401 F. Supp. 3d 781, 788 (E.D. Ky. 2019) (citing *Stringer v. Wal-Mart Stores, Inc.*, 151 S.W.3d 781, 793 (Ky. 2004), *overruled on other grounds* by *Toler*, 458 S.W.3d 276) (citation omitted). Some Kentucky cases articulate this "about the plaintiff" requirement as a separate element, but regardless, it is clear that the plaintiff bears the burden of proving that the allegedly defamatory statement is "about" him. *See*, *e.g.*, *Stringer*, 151 S.W.3d at 793; *Nat'l College of Ky., Inc. v. WAVE Holdings, LLC*, 536 S.W.3d 218, 222-23 (Ky. Ct. App. 2017); *Columbia Sussex Corp. v. Hay*, 627 S.W.2d 270, 273 (Ky. Ct. App. 1981).

That said, "the plaintiff need not be specifically identified in the defamatory matter itself so long as it was [] reasonably understood by [the] plaintiff's 'friends and acquaintances . . . familiar with the incident'" that the statement concerned the plaintiff. *Stringer*, 151 S.W.3d at 794 (quoting *E.W. Scripps Co. v. Cholmondelay*, 569 S.W.2d 700, 702 (Ky. Ct. App. 1978)). "When the defamatory statement does not name the defamed person, that person must prove that the article refers to himself." *E.W. Scripps Co.*, 569 S.W.2d at 702 (citing *Louisville Times Co. v. Emrich,* 66 S.W.2d 73 (1933)).

Slone contends that he has pleaded sufficient facts to meet the "about the plaintiff" requirement. [Record No. 18, pp. 6-7] This argument hinges on the idea that he is "is the sole member of NCC and it has no officers, agents, or employees." [*Id.* at p. 6] As NCC is an entity that cannot physically author a continuing education course, Slone argues that the litigation hold letter's allegation of plagiarism was reasonably understood to refer to him. [*Id.*]

CER acknowledges that Slone is the only member of NCC but argues that the Complaint indicates that the LLC hires other authors like Everhart to draft continuing education courses. [Record Nos. 13-1, p. 6 and 19, p. 4] It asserts that "Mr. Slone provides no factual basis that, even if there was some kind of implication in the Litigation Hold Letter (such implication also not pleaded), that it would be 'about the plaintiff' rather than about the author listed on the infringing course." [Record No. 13-1, p. 6] CER also argues that the rule regarding unnamed plaintiffs only applies where the allegedly defamatory statement does not name *any* specific individual. [Record No. 19, p. 4 (citing *E.W. Scripps Co.*, 569 S.W.2d at 702)]

Slone's arguments are more persuasive for several reasons. First, while it is possible to read *E.W. Scripps Co.* to preclude recovery for unnamed plaintiffs where others are named, CER takes the relevant language out of context. The actual language, "[w]hen the defamatory statement does not name the defamed person, that person must prove that the article refers to himself," does not compel the conclusion that unnamed plaintiffs may only recover if no other plaintiff is named. *E.W. Scripps Co.*, 569 S.W.2d at 702. Further, at least one case has contemplated application of the unnamed plaintiff rule where other individuals or entities are named in an allegedly defamatory statement. *See Dennison v. Murray State University*, 465 F. Supp. 2d 733, 750 (W.D. Ky. 2006).

Kentucky also allows unnamed plaintiffs to bring defamation claims where the defamatory statements reference a class of plaintiffs, the statements are "applicable to every member of the class," and the words used reflect upon the particular unnamed individuals in the class. *Kentucky Fried Chicken of Bowling Green v. Sanders*, 563 S.W.2d 8, 9 (Ky. 1978) (citing *Louisville Times Co.*, 66 S.W.2d at 73)). The litigation hold letter may not reference a

- 7 -

class of individuals by alluding to NCC, but the clear indication is that unnamed plaintiffs may recover in defamation under certain circumstances where a defamatory statement names a different target.

Second, the record at this time indicates that friends or acquaintances of Slone who are familiar with the incident could reasonably understand the letter to refer to him. It is true that the offending NCC course bears Everhart's name and all parties acknowledge that she and/or her associate were responsible for the copying the material. But Slone has pleaded that he is the sole member of NCC and that the LLC has no other employees, directors, or managers. The LLC may contract with individuals like Everhart to compose its continuing education resources, but the reference to the company in the letter singles out the entity itself and the indication is that Slone is synonymous with NCC. Therefore, even if friends or acquaintances were aware of Everhart and the unnamed author's involvement, they could reasonably understand the reference to NCC to be a reference to Slone himself.

Third, the Court's February 2020 opinion in *Nursing CE Central* as well as CER's other present arguments contemplate this conclusion. In *Nursing CE Central*, the Court found that truth was not an effective defense to NCC's defamation claim regarding the accusation of plagiarism because plagiarism involves deliberate conduct on the part of a plagiarist and there was no indication at that time that NCC deliberately adopted CER's work as its own. *Nursing CE Central*, Record No. 54, pp. 7-9. CER now attempts to relitigate this issue by claiming that plagiarism does not require deliberate conduct. [Record No. 13-1, pp. 7-10] Proceeding with this argument, the defendants assert that NCC itself committed plagiarism even if it did not deliberately copy CER's course. [*Id.*]

The Court's prior conclusion in *Nursing CE Central* as well as CER's renewed argument necessarily imply that the conduct of the course authors is separable from that of NCC. And as Slone argues, *someone* had to be responsible for NCC's conduct. The reference to NCC indicates that Slone was responsible for LLC's conduct as its sole member, employee, manager, and director.

Without any additional evidence regarding NCC's operations, it is reasonable to assume that a plagiarism allegation levelled against NCC applies to Slone as well. Thus, the Court agrees that Slone has pleaded facts that could plausibly demonstrate that the plagiarism allegation was "about the plaintiff." The Amended Complaint will not be dismissed for this reason.

**B.**

CER also argues that Slone has not pleaded facts that could prove that the letter was the proximate cause of Slone's alleged injuries. [Record No. 13-1, pp. 10-11] This argument depends, in part, on whether the plaintiff has pleaded a claim for defamation *per se* or defamation *per quod*.

A plaintiff alleging defamation must prove "either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication." *Toler*, 458 S.W.3d at 282. Actionability of a statement irrespective of special harm constitutes defamation *per se* while defamation *per quod* requires proof that the communication caused special damages. *See id.* "Spoken words are slanderous *per se* only if they impute crime, infectious disease, or unfitness to perform duties of office, or tend to disinherit him, written or printed publications, which are false and tend to injure one in his reputation or to expose him to public hatred, contempt, scorn, obloquy, or shame, are libelous *per se*." *Clark v. Teamsters*

*Local Union 651*, 349 F. Supp. 3d 605, 625 (E.D. Ky. 2018) (quoting *Stringer*, 151 S.W.3d at 795).

The Court has already found the plagiarism allegation to constitute defamation *per quod* in *Nursing CE Central*.  In doing so, the undersigned considered the statement's tendency to cause public hatred, contempt, scorn, obloquy, or shame.  *Nursing CE Central*, Record No. 54, pp. 11-13]  However, the Court observed that "[t]he doctrine of defamation *per se* arose out of a need to remedy reputational harms to individuals who cannot demonstrate pecuniary damages."  *Id.* (citing *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1083-84 (W.D. Ky. 1995)).  Further, as Court noted, "the Sixth Circuit has endorsed the view that courts should be more cautious in considering words to be libel *per se* when plaintiffs are businesses . . . ."  *Id.* (citing *ATC Distribution Group, Inc. v. Whatever It Takes Transmission & Parts, Inc.*, 402 F.3d 716- 17 (6th Cir. 2005)).  Therefore, the Court determined that the statement was libel *per quod*.

That analysis stands.  It is true that the plaintiff has pleaded that "the allegation of plagiarism exposed the Plaintiff to public hatred, contempt, scorn, obloquy or shame" and that the "statements harmed Plaintiff's reputation." [Record No. 9, ¶¶ 73, 79]  But these allegations are mere recitations of the standard for defamation *per se*.  The damages allegedly suffered by Slone are economic and stem from NCC's prospective buyer backing out of a deal to purchase the company and confer benefits on the plaintiff.  And the Court has determined that the defamatory statement is about Slone insofar as he is closely affiliated with his business, NCC.  Therefore, he has pleaded sufficient facts to maintain a defamation (libel) *per quod* claim but not a defamation *per se* claim.

Slone argues that he has sufficiently pleaded a defamation *per se* claim by contending that "the Defendants' allegation of plagiarism combined with the allegation of copyright infringement is an allegation that Shane Slone committed the crime of willful copyright infringement in violation of 17 U.S.C. § 506 *et seq.*, which further exposed the Plaintiff to public hatred, contempt, scorn, obloquy or shame." [Record Nos. 9, ¶ 74 and 18, pp. 3-6] "[A]lleged defamatory words must be construed in their most natural meaning and 'measured by the natural and probable effect on the mind of the average [reader].'" *Cromity v. Meiners*, 494 S.W.3d 499, 502 (Ky. Ct. App. 2015) (quoting *Stringer*, 151 S.W.3d at 793). As noted, the Court has determined that an allegation of plagiarism contemplates deliberate conduct on the part of a plagiarist. And it is true that a criminal copyright violation under 17 U.S.C. § 506 requires willful copyright infringement.

However, "the natural and probable effect" of the plagiarism allegation coupled with the copyright infringement accusation on the average reader is not an inference that the plaintiff has committed a criminal act given the context of the litigation hold letter. As CER points out, a litigation hold letter "advis[es] a potential custodian of relevant records of the need to preserve documents" for the purposes of *civil litigation*. [Record No. 13-1, pp. 6-7] The average person who read this letter would not reasonably jump to the conclusion that CER's lawyer accused Slone or NCC of a criminal act even though plagiarism and criminal copyright infringement each involve deliberate or willful conduct. Instead, the reasonable inference would be that NCC and Slone simply committed plagiarism and civil copyright infringement for the purposes of potential litigation by the defendants against NCC and Slone.

The Court is not persuaded that Slone's allegation in Paragraph 74 of the Amended Complaint is sufficient to maintain a defamation *per se* claim. The Court accordingly finds

that Slone's plagiarism-based defamation claim is only potentially actionable *per quod*. Thus, to the extent Slone asserts a completely separate defamation claim in Paragraph 74, that claim will be dismissed.

The question remains regarding whether Slone has sufficiently pleaded facts to allege proximate cause of the special damages he claims he suffered due to plagiarism accusation. He has pleaded that NCC was forced to disclose the defamatory allegations of the letter to its potential third-party purchaser in September 2019 and that the third-party withdrew its offer to acquire NCC in October 2019. [Record No. 9, ¶¶ 69-70] As a result, he asserts that he lost an offer of employment and an offer to share revenues. [*Id.* at ¶¶ 81-82] It may later be established that the defamatory letter itself did not proximately cause the alleged damages, but the Amended Complaint sufficiently pleads facts that, if true, could plausibly support proximate cause of the alleged special damages.

In summary, CER argues that the Amended Complaint does not sufficiently plead facts to support proximate cause of the alleged special damages. Proximate cause only pertains to defamation *per quod* claims, and despite Slone's assertions regarding an inference of criminality, the Court finds that the litigation hold letter sufficiently pleads a defamation (libel) *per quod* claim rather than a defamation *per se* claim. Any claims based on the alleged inference of criminal conduct will be dismissed.

That said, the Court also concludes that the Amended Complaint in this case sufficiently pleads facts that plausibly support proximate cause of the alleged special damages. The Amended Complaint will not be dismissed on proximate cause grounds.

C.

As noted, CER again argues that the Amended Complaint should be dismissed because its allegation of plagiarism in the litigation hold letter is true. [Record No. 13-1, pp. 7-10] This Court has found that plagiarism involves "[t]he deliberate and knowing presentation of another person's original ideas and creative expressions as one's own . . . ." *Nursing CE Central*, Record No. 54, pp. 7-9 (quoting *Plagiarism*, Black's Law Dictionary (11th ed. 2019)). The Court has considered CER's argument that plagiarism does not require deliberate conduct and finds no compelling reason to diverge from its previous analysis. Because there is no allegation that Slone knowingly or deliberately copied CER's work, the Amended Complaint will not be dismissed on the basis that the plagiarism accusation is true.

D.

CER also moves to dismiss any claims by Slone that the accusation of copyright infringement in the letter was defamatory, arguing that the Court foreclosed these claims in *Nursing CE Central*. [Record No. 13-1, p. 5] In Count 1 (the sole charge of the Amended Complaint), Slone asserts that the allegation of plagiarism was defamatory and that the allegation of plagiarism combined with the accusation of copyright infringement is essentially an allegation of criminal conduct for the purposes of defamation *per se*. [Record No. 9, ¶¶ 73-74] It does not appear that Slone claims the letter's copyright infringement accusation alone was defamatory, but to the extent he does, the Court will dismiss the claim because: (1) the Court found in *Nursing CE Central* that truth was a valid defense to the allegation that civil copyright infringement occurred; and (2) the Court has now rejected Slone's argument that the combined accusations of copyright infringement and plagiarism would lead a reader to infer criminal copyright infringement given the context of the litigation hold letter. *See Nursing CE*

*Central*, Record No. 54, p. 6. Accordingly, Slone may proceed only with a defamation *per quod* claim regarding the letter's accusation of plagiarism.

E.

Finally, CER contends it is entitled to qualified privilege. A defamation claim requires unprivileged publication of the defamatory statement. *Toler*, 458 S.W.3d at 282. Kentucky "recognize[s] a privilege for individuals communicating 'where the communication is one in which the party has an interest and it is made to another having a corresponding interest.'" *Toler*, 458 S.W.3d at 282 (quoting *Stringer*, 151 S.W. 3d at 795). The privilege is "qualified by the proviso that it not be abused, *i.e.,* that whatever defamation may have been spoken related solely to the investigation, that the remarks not be over-publicized, and that they not be published with malice." *Columbia Sussex Corp., Inc.*, 627 S.W. 2d at 275 (citing *Baker v. Clark*, 186 Ky. 816, 218 S.W. 280 (1920)).

"The burden is on the plaintiff to prove actual malice or abuse of the qualified privilege." *Clark*, 349 F. Supp. 3d at 624 (citing *Toler*, 458 F.3d at 284). A plaintiff seeking to defeat the qualified privilege must prove:

> (1) the publisher's knowledge or reckless disregard as to the falsity of the defamatory matter; (2) the publication of the defamatory matter for some improper purpose; (3) excessive publication; or (4) the publication of defamatory matter not reasonably believed to be necessary to accomplish the purpose for which the occasion is privileged.

*Id.* (quoting Toler, 458 F.3d at 284).

Here, as in *Nursing CE Central*, the qualified privilege applies. CER had a litigation-based interest in the letter at issue, and KBN had a corresponding interest because it may be a source of relevant evidence in this litigation and related cases. *Nursing CE Central*, Record No. 54, p. 15. But Slone sufficiently pleads an abuse of the qualified privilege by alleging

malice and stating that CER has "engaged in a pattern of activity with other competitors of pursuing or threatening litigation and, upon information and belief, contacting state boards of nursing with allegations of plagiarism and copyright infringement for the sole purpose of inhibiting competition." [Record No. 9, ¶¶ 53, 77] Therefore, while it is premature to consider whether the qualified privilege was actually abused, the Court will not dismiss the plagiarism-based defamation claim on the basis of qualified privilege at this time.

### IV.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. Defendants CE Resource, Inc., CE Resource, LLC, and CE Resources, Inc.'s motion to dismiss Plaintiff Shane Slone's Amended Complaint [Record No. 13] is **GRANTED**, in part, and **DENIED**, in part.

2. The Amended Complaint's defamation *per quod* claim regarding the plagiarism allegation in the defendants' litigation hold letter to the Kentucky Board of Nursing remains pending. All other claims asserted in the Amended Complaint are **DISMISSED**.

Dated: June 17, 2020.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky